1 | MARK D. LONERGAN (State Bar No. 143622)
EDWARD R. BUELL, III (State Bar No. 240494)
2 | LASZLO LADI (State Bar No. 265564)
ll@severson.com
3 | SEVERSON & WERSON
A Professional Corporation
4 | One Embarcadero Center, Suite 2600
San Francisco, California 94111
5 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A. and HSBC
BANK USA, NATIONAL ASSOCIATION AS
TRUSTEE FOR WELLS FARGO ASSET
SECURITIES CORPORATION MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES
2007-8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIALUZ A. BANARES,<br><br>      Plaintiff,<br><br>   vs.<br><br>WELLS FARGO BANK, N.A. and HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-8,<br><br>      Defendants. | Case No. C13-4896-EMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:   February 6, 2014<br>Time:   1:30 p.m.<br>Place:  Courtroom 5 - 17th Floor<br><br>The Hon. Edward M. Chen<br><br>Action Filed:   October 22, 2013 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Plaintiff's Underlying Theory for Wrongful Foreclosure Still Fails......................... 1

        1. Plaintiffs Admits that HSBC Was Transferred the Loan and HSBC Is Attempting to Foreclose. ............................................................................ 1

        2. California Does Not Require the Recording of an Assignment for all Transfers of the Loan. .................................................................................... 2

        3. A Purportedly Late Assignment Is Only Voidable. ...................................... 3

        4. Plaintiff Does Not Allege Prejudice............................................................... 4

    B. The Opposition Fails to Rescue Plaintiff's Individual Causes of Action. ................ 6

        1. Plaintiff's First Cause of Action Fails to State a Claim. ............................... 6

        2. Plaintiffs' Second Cause of Action for Wrongful Foreclosure Still Fails. ................................................................................................................ 6

        3. The Opposition Fails to Rescue Plaintiff's Third through Seventh Causes of Action. ............................................................................................. 7

        4. The Opposition Fails to Rescue Plaintiff's Eight Cause of Action Under the FDCPA. .......................................................................................... 8

        5. Plaintiff's Ninth Cause of Action for Violation of Cal. Bus. & Prof. Code § 17200 Still Fails to State a Claim. ...................................................... 9

        6. The Tenth Cause of Action Fails to State a Claim. .................................... 10

III. CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aguilar v. Bocci*,
   39 Cal.App.3d 475 (1974) ................................................................................................. 7

*Apostol v. CitiMortgage, Inc.*,
   2013 WL 6328256 (N.D. Cal. Nov. 21, 2013) ................................................................ 3, 4, 5

*California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*,
   94 Cal.App.4th 151 (2001) ............................................................................................... 10

*Calvo v. HSBC Bank USA, N.A.*,
   199 Cal.App.4th 118 (2011) .............................................................................................. 3

*Cerezo v. Wells Fargo Bank, N.A.*,
   2013 WL 4029274 (N.D. Cal. Aug. 6, 2013) ..................................................................... 1

*Fontenot v. Wells Fargo Bank, N.A.*,
   198 Cal.App.4th 256 (2011) ................................................................................... 3, 4, 5, 8

*Garfinkle v. JPMorgan Chase Bank*,
   2011 WL 3157157 (N.D. Cal. July 26, 2011) ..................................................................... 8

*Glaski v. Bank of America, National Association*
   218 Cal.App.4th 1079 (2013) ......................................................................................... 3, 4, 7

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*,
   41 Cal. App. 4th 1410 (1996) .......................................................................................... 10

*Hine v. Huntington*,
   103 N.Y.S. 535 (N.Y. App. Div. 1907) ............................................................................. 4

*Hosseini v. Wells Fargo Bank, N.A.*
   2013 WL 4279632 (N.D. Cal., Aug. 9, 2013) .................................................................... 2

*Javaheri v. JPMorgan Chase Bank, N.A.*
   2011 WL 2173786 (C.D. Cal., June 2, 2011) .................................................................... 1

*Jenkins v. JP Morgan Chase Bank, N.A.*,
   216 Cal.App.4th 497 (2013) ........................................................................................... 2, 9

*Jogani v. Superior Court*,
   165 Cal.App.4th 901 (2008) ............................................................................................ 10

*Leasing Service Corp. v. Vita Italian Restaurant, Inc.*,
   566 N.Y.S.2d 796 (1991) ................................................................................................ 3, 4

*McKell v. Washington Mut., Inc.*,
  142 Cal.App.4th 1457 (2006) .................................................................................................. 10

*Melchior v. New Line Productions, Inc.*,
  106 Cal.App.4th 779 (2003) .................................................................................................... 10

*Mooney v. Madden*,
  597 N.Y.S.2d 775 (1993) ........................................................................................................... 3

*Naranjo v. SBMC Mortg.*,
  2012 WL 3030370 (S.D. Cal., July 24, 2012) ................................................................. 2, 9, 10

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) ....................................................................................... 6

*In re Sandri*,
  501 B.R. 369 (Bankr. N.D. Cal. 2013) .................................................................................. 4, 7

*Siliga v. Mortgage Elec. Registration Sys., Inc.*,
  219 Cal. App. 4th 75 (2013) .................................................................................................. 1, 4

*Subramani v. Wells Fargo Bank N.A.*,
  2013 WL 5913789 (N.D. Cal., Oct. 31, 2013) ....................................................................... 1, 4

*Zapata v. Wells Fargo Bank, N.A.*,
  2013 WL 6491377 (N.D. Cal. Dec. 10, 2013) ........................................................................... 4


**STATUTES, RULES**

United States Code
    Title 12, § 2605 ........................................................................................................................ 6

Civil Code
    § 2934a ...................................................................................................................................... 7

Federal Rule of Civil Procedure
    Rule 12 ...................................................................................................................................... 1


**OTHER AUTHORITIES**

4 Miller & Starr, Cal. Real Estate (3d ed.2003) § 10:38 ................................................................ 3

55000.0987/3008334.1                                    iii                                    C13-4896-EMC
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# I. INTRODUCTION

Wells Fargo Bank, N.A. ("Wells Fargo") and HSBC Bank USA, National Association as trustee for Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, series 2007-8 ("HSBC") (collectively, "Defendants") moved to dismiss the Complaint of Marialuz A. Banares ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(6) on November 14, 2013. Dkt. No. 5. On December 4, 2013, the Court granted a stipulated request to extend Plaintiff's time to oppose Defendants' Motion to Dismiss. Dkt. No. 9. Plaintiff filed her opposition brief (the "Opposition") on December 16, 2013. Dkt. No. 10. Defendants herein file their reply.

# II. ARGUMENT

**A.  Plaintiff's Underlying Theory for Wrongful Foreclosure Still Fails.**

    **1.  Plaintiffs Admits that HSBC Was Transferred the Loan and HSBC Is Attempting to Foreclose.**

In the Complaint, Plaintiff makes numerous explicit references to purported violations of the pooling and servicing agreement ("PSA") governing the securitization of Plaintiff's loan. *See*, *e.g.*, Complaint ("Compl.") ¶¶ 6, 7, 9, 10, 12. However, Plaintiff now contends that the Complaint is not based on a purported violation of the PSA. Opposition ("Opp.") at 7:9–13. Instead, Plaintiff's theory is apparently that because the loan was securitized, Wells Fargo did not retain the right to foreclose. Opp. at 7:14–20. The Opposition cites heavily to two recent cases, *Cerezo v. Wells Fargo Bank, N.A.*, 2013 WL 4029274 (N.D. Cal. Aug. 6, 2013) and *Subramani v. Wells Fargo Bank N.A.*, 2013 WL 5913789 (N.D. Cal., Oct. 31, 2013), for this position. However, in both cases the original lender was foreclosing and the court found that the plaintiff's allegation that the loan was securitized stated a claim that the original lender did not have the right to foreclose. *Subramani*, 2013 WL 5913789, at *4; *Cerezo*, 2013 WL 4029274, at *8. A third case cited by Plaintiff involves a similar fact pattern. *Javaheri v. JPMorgan Chase Bank, N.A.* 2011 WL 2173786, at *5 (C.D. Cal., June 2, 2011). Here, however, the original lender, Wells Fargo, is not foreclosing. *See* RJN Ex. B (assignment to HSBC). Instead, HSBC is foreclosing. *Id.* Therefore, this theory and the above three cases do not help Plaintiff state a claim.

Plaintiff also attempts to distinguish the Complaint from *Siliga v. Mortgage Elec. Registration Sys., Inc.*, 219 Cal. App. 4th 75 (2013) and *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497 (2013) because Plaintiff believes these two cases involve "preemptive" suits and the Complaint does not. Opp. at 8:26–9:7. Plaintiff defines a preemptive suit as one involving no specific facts supporting the allegation that the foreclosure was initiated by the wrong party. Opp. at 8:27–9:2. However, here, as discussed above, Plaintiff **has** admitted that the foreclosure was initiated by the correct party (HSBC). *See* Compl. ¶ 6. Therefore, under Plaintiff's own definition of a preemptive suit, Plaintiff does not state a claim.

Plaintiff also frequently cites to *Naranjo v. SBMC Mortg.*, 2012 WL 3030370 (S.D. Cal., July 24, 2012) throughout the Opposition to support her argument that she can make a claim based on a purported improper securitization of the loan. Opp. at 9:8–18. However, other courts have remarked that *Naranjo* is not persuasive because the court did not explain how the plaintiff has standing to challenge the securitization agreement. *See*, *e.g.*, *Hosseini v. Wells Fargo Bank, N.A.* 2013 WL 4279632, at *3 fn. 4 (N.D. Cal., Aug. 9, 2013).

In sum, Plaintiff admits that she obtain a loan from Wells Fargo (Compl. ¶ 5), the loan was transferred to HSBC (Compl. ¶ 6), and now HSBC is foreclosing. Compl. ¶¶ 15, 18, 20. Wells Fargo has remained the servicer of the loan since inception. *See* Compl. ¶ 18 (Plaintiff admits that Wells Fargo is the servicer on behalf of HSBC); RJN Ex. A at § 20 (a change in ownership of the loan does not necessarily require a change in the servicer or the entity entitled to collect payments). Still, somehow Plaintiff believes the wrong entity is foreclosing. Clearly, Plaintiff has manufactured an issue where none exists.

**2. California Does Not Require the Recording of an Assignment for all Transfers of the Loan.**

If Plaintiff admits that HSBC is the ultimate transferee of the loan, and an assignment was recorded to HSBC, then the only apparent claim is based on Plaintiff's belief that all intermediate transfers of the loan must have a recorded assignment. *See* Compl. at 2:25–26; Compl. ¶ 11. However, as discussed in Defendants' Motion to Dismiss (and ignored in the Opposition), California law does not require the recording of all assignments of a note or deed of trust. *See*

1  Mtn. to Dismiss at 6:3–18.  A deed of trust does not require a recorded assignment for the assignee
2  to exercise the power of sale.  *Calvo v. HSBC Bank USA, N.A.*, 199 Cal.App.4th 118, 123 (2011).
3  Similarly, a promissory note may be transferred without a written assignment, with the transferee
4  acquiring a beneficial interest in the deed of trust by operation of law.  *Fontenot v. Wells Fargo*
5  *Bank, N.A.*, 198 Cal.App.4th 256, 272 (2011); 4 Miller & Starr, Cal. Real Estate (3d ed.2003)
6  § 10:38.  Therefore, the purported lack of assignments for all of the parties involved with the
7  securitization process also does not help Plaintiff state a claim.

8       **3.     A Purportedly Late Assignment Is Only Voidable.**

9       Notwithstanding the numerous references to it in the Complaint, Plaintiff contends that
10 *Glaski v. Bank of America, National Association* (2013) 218 Cal.App.4th 1079 is not an integral
11 part of the Complaint.  Opp. at 7:9–13.  However, Plaintiff still believes it worthwhile to defend
12 *Glaski's* interpretation of New York trust law.  Opp. at 10:21–11:19.  This is because the **only**
13 basis for Plaintiff argument that Defendants lack standing is the purported violation of the PSA
14 and securitized trust.  *See* Compl.  In a recent decision, *Apostol v. CitiMortgage, Inc.*, 2013 WL
15 6328256 (N.D. Cal. Nov. 21, 2013) the court rejected a similar claim where the plaintiff's only
16 basis for challenging the defendants right to foreclose was based on a purported securitization
17 error.  *Apostol*, 2013 WL 6328256, at * 6–7 (plaintiff argued a securitization error created a
18 irreversible break in the chain of title).  In rejecting the plaintiff's claim, the court examined and
19 rejected the underlying alleged securitization error, particularly in light of *Glaski*'s incorrect
20 reasoning.

21      Here, to attempt to rescue *Glaski*, Plaintiff tries to discredit the argument that New York
22 appellate courts have held that a trustee's ultra vires act is only voidable by examining a few of the
23 cases cited by Defendants for this position.  Opp. at 10:21–11:19.  First, in interpreting *Mooney v.*
24 *Madden*, 597 N.Y.S.2d 775 (1993) Plaintiff ignores it's procedural posture.  *Mooney* involved a
25 challenge brought by one of the trust beneficiaries (thus, lack of consent is clear).  *Mooney,* 597
26 N.Y.S.2d 776.  Here, however, Plaintiff admits she is not a party to the securitization or the trust.
27 Opp. at 10:8–10.  Next, Plaintiff believes that *Leasing Service Corp. v. Vita Italian Restaurant,*
28 *Inc.*, 566 N.Y.S.2d 796 (1991) is not persuasive because it involved contract law.  Opp. at 11:3–7.

1  However, Plaintiff misses a key statement made by the court. "It is hornbook law that a contract
2  entered into by an infant or by an unauthorized agent, corporate officer, **trustee** or other person
3  purporting to act in a representative capacity, or obtained as the result of mistake or duress, **is**
4  **voidable**. *Leasing Serv. Corp.,* 566 N.Y.S.2d at 797–98. Similarly, despite Plaintiff's contentions
5  otherwise, *Hine v. Huntington* holds that a trust beneficiary may authorize an unauthorized
6  investment. *Hine v. Huntington*, 103 N.Y.S. 535, 540 (N.Y. App. Div. 1907)("We have before
7  this called attention to the fact that the cestui que trust [beneficiary] is at perfect liberty to elect to
8  approve an unauthorized investment and enjoy its profits, or to reject it at his option.").
9         Moreover, since Defendants' Motion to Dismiss, even more courts have disagreed with
10 and declined to follow *Glaski*. *See*, *e.g.*, *Apostol*, 2013 WL 6328256, at * 6–7 (noting *Glaski*
11 represents a distinct minority); *Zapata v. Wells Fargo Bank, N.A.*, 2013 WL 6491377, at *2 (N.D.
12 Cal. Dec. 10, 2013). In fact, one court also reviewed the New York law on the subject and found
13 that New York appellate courts found such an act only voidable (citing to the same cases as
14 Defendants). *In re Sandri*, 501 B.R. 369 (Bankr. N.D. Cal. 2013). Even *Subramani*¸ cited
15 favorably by Plaintiff, rejected the holding of *Glaski*. *Subramani*, 2013 WL 5913789, at *4.
16        Because Plaintiff's only challenge of Defendants' right to foreclose is based on the
17 securitization process, and the holding of *Glaski* is resoundingly in the minority, Plaintiff fails to
18 state a claim.
19        **4.     Plaintiff Does Not Allege Prejudice.**
20        Apart from the argument that Plaintiff has not actually stated an procedural irregularly
21 based on the securitization and transfer of the loan, Plaintiff has also not stated any allegation of
22 prejudice. This inquiry is separate. *Siliga v. Mortgage Elec. Registration Sys., Inc.*, 219 Cal. App.
23 4th 75, 85 (2013); *Apostol*, 2013 WL 6328256, at * 7. Absent sufficient facts establishing
24 prejudice from the purportedly improper transfer of the loan, Plaintiff lacks standing " to complain
25 about any alleged lack of authority or defective assignment." *Id.*; *see also Apostol*, 2013 WL
26 6328256, at * 7. In attempting to refute the application of *Fontenot v. Wells Fargo Bank, N.A.*,
27 198 Cal. App. 4th 256 (2011) on this point, the Opposition focuses on the specific facts in
28 *Fontenot*, and ignores the big picture. Opp. at 12:5–16. In *Fontenot*, the court found that to state

1  a claim for wrongful foreclosure, the plaintiff must demonstrate that the alleged irregularity was
2  prejudicial.  *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272 (2011).  One
3  example of a prejudice that comes to mind is an allegation that the alleged irregularity interfered
4  with the borrower's payment obligations.  *Id*.  However, where the irregularity is based on a
5  purported defect with the assignment, it is difficult to conceive how this would affect the
6  borrower.  *Id*.

7  Here, Plaintiff does not dispute the default on the loan.  *See* Compl. ¶ 20.  In this situation,
8  the purported damages identified by Plaintiff in paragraph 39 stem from her default on the loan,
9  not the purported irregularities.  *See* Compl. ¶ 39 (Plaintiff's alleged damages include the
10 imminent sale of the Property, emotional distress, fees and costs associated with the foreclosure,
11 and damage to her credit).  The purported irregularities in the securitization process did not change
12 the terms of Plaintiff's payment obligations or the beneficiary's remedies upon default.  *See*
13 *Apostol*, 2013 WL 6328256, at * 7.

14 Plaintiff also makes the circular argument that she was damaged because she made
15 payments to Wells Fargo (at some unspecified point), who is allegedly unauthorized.  Compl.
16 ¶ 39.  However, first, Plaintiff admits that Wells Fargo was servicer on behalf of HSBC.  Compl.
17 ¶ 18.  Plaintiff also admits that the loan was transferred to HSBC.  Compl. ¶ 6.  As discussed
18 above, there is no basis for Plaintiff's belief that HSBC lacks authority.  Thus, it is unclear why
19 Plaintiff persists in the wrongful belief that Wells Fargo lacks authority to receive payments.  *See*
20 Compl. ¶ 39.  Moreover, Plaintiff does not allege that Wells Fargo (or any other party) sent her a
21 notice of a chance in the servicer or the entity required to receive payments.  Under the deed of
22 trust, a change in the servicer is not required, even if there is a sale of the loan.  *See* RJN Ex. A at
23 § 20.  Therefore, Wells Fargo, as original lender remained entitled to the payments under the terms
24 of the loan since it's inception.

25 In short, Plaintiff has not stated any prejudice from the purported irregularities raised in the
26 Complaint.  As a result, none of Plaintiff's claims for wrongful foreclosure state a claim.  Finally,
27 the Opposition concludes this section by citing a number of cases where a claim for wrongful
28 foreclosure has survived a demurrer or motion to dismiss.  Opp. at 12:22–13:16.  However, the

Opposition does not engage in any meaningful analysis regarding the nature of the allegations in these cases and how they compare with Plaintiff's claims.  A mere possibility of stating a claim under specific facts does not mean that Plaintiff has stated a claim here.

**B.     The Opposition Fails to Rescue Plaintiff's Individual Causes of Action.**

**1.     Plaintiff's First Cause of Action Fails to State a Claim.**

Plaintiff argues that the July 23, 2013 letter is a qualified written request ("QWR") because one of the requests seeks loan servicing records, and payment records, among other items.  Opp. at 15:15–20.  However, Plaintiff ignores that this single request is buried among 42 other requests.  *See* Compl. Ex. F.  Almost all of these requests relate to Plaintiff's allegations regarding the securitization.  *See*, *e.g.*, Compl. Ex. F. questions 12, 14, 27, 37.  To be a qualified written request, the correspondence must "include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides **sufficient detail to the servicer regarding other information sought by the borrower**." 12 U.S.C. § 2605(e)(1)(B) (emphasis added).  Here, this request for servicing records is buried in a four page letter that contains 42 separate questions (not including subparts) almost all of which are unrelated to servicing of the loan.  This request does not provide clear and sufficient sufficiently detail regarding Plaintiff's purported request to Wells Fargo.

Next, Plaintiff counters that she has alleged damages stemming from the purported failure to respond to the July 23, 2013 letter by citing to paragraph 39 of the Complaint.  Opp. at 15:21.  However, these items of damages stem from Plaintiff's default on the loan, not the purported failure to respond to the July 23, 2013 letter.  Nor is it clear how the purported failure to provide Plaintiff servicing records after July 2013 could damage Plaintiff when she defaulted on October 1, 2012.  *See* RJN Ex. D; Compl. Ex E.

As a result, Plaintiff's first cause of action still fails to state a claim and Defendants request the Court grant their Motion to Dismiss this cause of action.

**2.     Plaintiffs' Second Cause of Action for Wrongful Foreclosure Still Fails.**

As discussed in Defendants' arguments above, Plaintiff's underlying theory challenging the foreclosure based on the securitization of the loan fails to state a claim.  Defendants also argue

1  that a claim for wrongful foreclosure is premature because no sale has taken place.  *See Rosenfeld*
2  *v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 961 (N.D. Cal. 2010).  Plaintiff disputes this
3  argument and authority simply by saying nonsense and cites no authority for the contrary position.
4  This is not persuasive reasoning.

5       Next, the Opposition argues that tender is not required because any future sale would be
6  void.  Opp. at 14:3–27.  However, as discussed above related to *Glaski*, any purported irregularity
7  based on securitization errors is only voidable, not void.  *See In re Sandri*, 501 B.R. 369.  As a
8  result, Plaintiff has not pled any reason to relax the tender rule.

9       In light of the above reasons, Defendants respectfully request the Court grant their Motion
10 to Dismiss this cause of action with prejudice.

11     **3.**    **The Opposition Fails to Rescue Plaintiff's Third through Seventh Causes of Action.**
12

13      In response to Defendants' argument that Plaintiff must be required to tender to quiet title
14 against the deed of trust, Plaintiff cites to *Glaski*.  Opp. at 16:12–16.  However, *Glaski* involved a
15 plaintiff seeking to invalidate a completed trustee's sale.  *Glaski*, 218 Cal. App. 4th at 1100.  It
16 did not touch upon a borrower seeking to quiet title against their deed of trust.  The purported
17 irregularities of the securitization process do not provide a reason for Plaintiff to obtain the
18 property completely free of her $558,750 loan.  As a result, the tender rule should remain
19 applicable to a borrower seeking to discharge the deed of trust against their property.  "A trustor
20 cannot "quiet title without discharging his debt.  The cloud upon his title persists until the debt is
21 paid."  *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477 (1974)(citation omitted).  Similarly, Plaintiff
22 presents no reason why the Court should cancel or quiet title against the deed of trust based on
23 Plaintiff's securitization and invalid transfer argument.  The Opposition presents no argument
24 whatsoever to support this position.

25      Plaintiff's causes of action for quiet title, slander of title, fraud, cancellation of instrument,
26 and violation of Civil Code section 2934a also all fail for the same two reasons as discussed
27 above.  First, Plaintiff has not alleged the falsity of the assignment and foreclosure documents
28 because she admits the loan was transferred to HSBC.  *See* Compl. ¶ 6.  Second, Plaintiff has not

1 alleged any prejudice or damages based on the purported irregularities related to the transfer of the
2 loan. *See Fontenot*, 198 Cal. App. 4th at 272. Any damages identified by Plaintiff stem from her
3 default on the loan, not the purported irregularities related to the transfer of the loan. *See* Compl.
4 ¶ 39. With respect to these four causes of action, the Opposition adds nothing new and only
5 repeats the arguments made elsewhere in the Opposition. *See* Opp. at 16:12–18:2.

6       Therefore, Defendants request the Court grant their Motion to Dismiss these causes of
7 action with prejudice.

      **4.    The Opposition Fails to Rescue Plaintiff's Eight Cause of Action Under the FDCPA.**

10       Related to Plaintiff's eight cause of action for violation of the Federal Debt Collection
11 Practices Act ("FDCPA"), Plaintiff first argues that Defendants are debt collectors because the
12 transfer of the loan to HSBC in 2007 was not legally effective based on her securitization theory.
13 Opp. at 18:20–24. However, this argument is predicated on Plaintiff's discounted securitization
14 theory, discussed above.

15       Plaintiff next argues that the activity at issue in the complaint is debt collection because it
16 does not concern foreclosure. Opp. at 19:3–12. This is completely at odds with the allegations in
17 the Complaint. *See*, *e.g.*, Compl. ¶¶ 75, 76, 77. To the extent Plaintiff claims that Defendants
18 (through the foreclosure trustee, Quality Loan Service Corporation), were trying to collect
19 payments on the loan, it was based on Plaintiff's receipt of the notice of default. Compl. ¶ 77. In
20 other words, Plaintiff's claim is based on the receipt of the notices required to conduct a non-
21 judicial foreclosure. *Id.* As a result, contrary to Plaintiff's arguments, the conduct at issue is
22 foreclosure. Therefore, Plaintiff does not state a claim because foreclosure proceedings are not
23 debt collection. *See*, *e.g.*, *Garfinkle v. JPMorgan Chase Bank*, 2011 WL 3157157, at * 3 (N.D.
24 Cal. July 26, 2011)(collecting cases).

25       Even if Plaintiff seeks to amend the allegation to attempt to state a claim based on Wells
26 Fargo's receipt of payments from Plaintiff, such a claim would fail because Wells Fargo is
27 servicer of the loan and has been entitled to payments from the loan's inception. *See* Compl. ¶ 18
28 (Plaintiff admits that Wells Fargo is the servicer on behalf of HSBC); RJN Ex. A at § 20 (a change

1  in ownership of the loan does not necessarily require a change in the servicer or the entity entitled
2  to collect payments).

3  Therefore, Defendants respectfully request that the Court grant Defendants' Motion to
4  Dismiss this cause of action with prejudice.

5  **5.  Plaintiff's Ninth Cause of Action for Violation of Cal. Bus. & Prof. Code § 17200 Still Fails to State a Claim.**
6

7  Plaintiff argues that she has pled sufficient facts to establish standing to support her ninth
8  cause of action under California Business and Professions Code section 17200 (unfair competition
9  law, hereinafter "UCL") because Defendants allegedly collected payments they had no right to
10 receive.  Opp. at 20:1–13.  Plaintiff's argument is based on *Naranjo v. SBMC Mortgage*, 2012 WL
11 3030370 (S.D. Cal. July 24, 2012).

12 However, here, unlike *Naranjo*, Plaintiff has not stated any facts establishing that
13 Defendants are not entitled to collect payments.  Here, as discussed throughout this reply, Wells
14 Fargo was original lender and remained entitled to collect payments even after the securitization of
15 the loan.  *See* Compl. ¶ 18 (Plaintiff admits that Wells Fargo is the servicer on behalf of HSBC);
16 RJN Ex. A at § 20 (a change in ownership of the loan does not necessarily require a change in the
17 servicer or the entity entitled to collect payments).

18 Plaintiff also attempts to counter Defendants' reliance on *Jenkins v. JPMorgan*.  Opp. at
19 21:2–7.  Plaintiff argues *Jenkins* is distinguishable because Plaintiff alleges the conduct derived
20 from the assignment recorded on March 26, 2013 and the notice of default was not recorded until
21 April 23, 2013.  *Id*.  Therefore, Plaintiffs believes that here, unlike *Jenkins*, the allegedly wrongful
22 conduct predated her default and therefore somehow caused of her default.  *Id*.  However, Plaintiff
23 misses that the fact her default occurred earlier than March 26, 2013.  Compl. Ex. E.  Instead, the
24 notice of default states Plaintiff defaulted on October 1, 2012.  *Id*.  More importantly, Plaintiff
25 misses the big picture holding of *Jenkins*.  The alleged irregularities related to the transfer of the
26 loan are unconnected to Plaintiff's non-payment of her loan obligation.  Plaintiff has offered no
27 explanation or analysis to bridge the missing causation element that is required to establish
28 standing under the UCL.  *See Jenkins*, 216 Cal. App. 4th at 523.

Plaintiff next argues that she has, in fact, pled predicate misconduct. Opp. at 20:14–21:1. However, these claims are predicated on the same alleged conduct raised elsewhere in the Complaint. The Opposition offers nothing new to rescue Plaintiff's predicate claims related to the securitization and/or transfer of the loan.

As a result, Defendants request the Court grant their Motion to Dismiss this cause of action with prejudice.

**6.     The Tenth Cause of Action Fails to State a Claim.**

Finally, to support her tenth cause of action, in the Opposition, Plaintiff argues that some California courts have recognized a separate cause of action for unjust enrichment. Opp. at 21:11–18. However, even among the cases cited by Plaintiff, there is a recognition that California courts are split on the issue. *Naranjo*, 2012 WL 3030370, at *5. Other courts have stated no such cause of action exists. *See*, *e.g.*, *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003)("there is no cause of action in California for unjust enrichment"); *Jogani v. Superior Court*, 165 Cal.App.4th 901, 911 (2008)("it is a general principle underlying various doctrines and remedies, including quasi-contract"); *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1490 (2006)("There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.") Still other courts have remarked that a valid contract between the parties precludes reliance on a quasi-contract theory. *See*, *e.g.*, *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal.App.4th 151, 172 (2001); *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (1996). Here, despite Plaintiff's claims to the contrary, the deed of trust and promissory note governs the payment obligations between Plaintiff and Defendants. Therefore, a cause of action for unjust enrichment under a quasi-contract theory is superfluous and unnecessary.

More importantly, as discussed throughout this reply, Plaintiff has not stated a valid reason to support her claim that Wells Fargo was not entitled to the payments. Plaintiff's claim for unjust enrichment against Wells Fargo is based on her belief that Wells Fargo was not entitled to receipt of the payments after the loan was securitized. Compl. ¶ 92. However, Wells Fargo

1 was the original lender on the loan.  Compl. ¶ 5.  The mere fact that the owner of the loan may
2 change does not necessarily require a change in the servicer.  *See* RJN Ex. A at § 20.  Because
3 Plaintiff does not allege that Wells Fargo (or any other entity) provided notice of a change in
4 servicer, Plaintiff has no basis to believe anyone but Wells Fargo is entitled to receipt of the
5 payments.
6       Accordingly, Defendants request the Court grant their Motion to Dismiss this cause of
7 action with prejudice.

### III.  CONCLUSION

9       In sum, the Opposition offers no persuasive reason that the claims for wrongful foreclosure
10 based on purported securitization errors state a claim anywhere in the Complaint.  As many, if not
11 all, of these theories have been rejected as a matter of law by courts in similar circumstances,
12 Defendants respectfully request the Court grant their Motion to Dismiss with prejudice.

13 DATED:  December 23, 2013         Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation

By:        */s/ Laszlo Ladi*
          Laszlo Ladi

Attorneys for Defendants WELLS FARGO BANK, N.A. and HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-8