United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIALUZ A. BANARES,<br><br>       Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., *et al.*,<br><br>       Defendants.<br>_____/ | No. C-13-4896 EMC<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS**<br><br>**(Docket No. 5)** |

## I. INTRODUCTION

Plaintiff, Marialuz A. Banares, filed a complaint ("Complaint") against Wells Fargo Bank, N.A. ("Wells Fargo") and HSBC Bank USA, N.A. ("HSBC") as Trustee for Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-8 (collectively, "Defendants"), alleging that Defendants unlawfully initiated foreclosure proceedings against Plaintiff. Plaintiff alleges ten causes of action against one or both Defendants: Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, Wrongful Foreclosure, Quiet Title, Slander of Title, Fraud, Cancellation of Instruments, Violation of Cal. Civ. Code § 2934(a)(1)(A), Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Violation of Cal. Bus. & Profs. Code § 17200 *et seq.* ("UCL"), and Unjust Enrichment.

Currently pending before the Court is Defendants' motion to dismiss the complaint (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(6). The Court **GRANTS** the Motion for the reasons set forth below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or about April 10, 2007, Plaintiff obtained a loan from Wells Fargo for $558,750 (the "Loan"). Complaint ("Compl.") ¶ 4; Exhibit to Complaint ("Exh") A. The Loan was recorded in a promissory note (the "Note") and was secured by a deed of trust (the "DOT") against real property in Hercules, California (the "Property"). Exh. A. Under the DOT, Wells Fargo was the lender, and Fidelity National Title Insurance Company was the trustee. *Id*. at 2.

Plaintiff alleges that Wells Fargo sold the Loan to Wells Fargo Asset Securities Corporation ("WFASC"). Compl. ¶ 11. Subsequently, on or before June 28, 2007, WFASC allegedly sold the Loan to HSBC Bank USA, as trustee for the Wells Fargo Securities Corporation Mortgage Pass-Through Certificates, Series 2007-8 trust (the "Series 2007-8 Trust" or "Trust"). *Id*. The "closing date" of the Series 2007-8 Trust was June 28, 2007. *Id*. The Pooling and Services Agreement ("PSA") governing the Trust prohibits assignments of loans to the Trust after the closing date, as well as assignments of loans that are in default. Compl. ¶ 14.

On March 26, 2013, Wells Fargo executed a Corporate Assignment of Deed of Trust ("Assignment"), assigning its beneficial interest under the DOT to HSBC Bank USA, as Trustee for the Series 2007-8 Trust. Compl. ¶ 15, Exh. C. On April 11, 2013, Wells Fargo, "as servicer and attorney-in-fact for HSBC Bank USA," executed a Substitution of Trustee ("Substitution"), substituting Quality Loan Service Corporation ("QLS") for Fidelity National Title Insurance Company as the trustee under the DOT. Compl. ¶ 18, Exh. D. On April 19, 2013, QLS executed a Notice of Default ("NOD"), stating that Plaintiff was in default by $27,756.14. Compl. ¶ 20, Exh. E. On October 1, 2013, QLS executed a Notice of Trustee's Sale ("NTS"), scheduling a sale of the Property for October 30, 2013. Exh. G. All of these documents – the Corporate Assignment of Deed of Trust, Substitution of Trustee, Notice of Default, and Notice of Trustee's Sale (collectively, "Documents") – were recorded with the Contra Costa County Recorder's Office. *See* Exhs. C, D, E, G.

Plaintiff filed a verified complaint on October 22, 2013, before the scheduled foreclosure sale. Plaintiff alleges that the assignments of the Loan – first from Wells Fargo to WFASC, then from WFASC to HSBC – were not effective because the Note was not endorsed and the DOT was

not assigned on either assignment. Compl. ¶¶ 11-13. Proper endorsement of the Note and assignment of the DOT were required in order for the Series 2007-8 Trust to qualify for favorable tax treatment as a Real Estate Mortgage-Backed Securities Conduit ("REMIC") under the Internal Revenue Code. Compl. ¶¶ 8-9.

Notwithstanding the allegation that the assignments were ineffective, Plaintiff also alleges that Wells Fargo sold the Loan to WFASC, and WFASC sold the Loan to HSBC. Compl. ¶ 11. The Complaint provides an webpage link to the "Free Writing Prospectus" filed with the Securities Exchange Commission, which identifies the Loan as one of the loans in the Trust. Compl. ¶ 6. Attached to the Complaint is also an "ABSNET" screenshot showing the Loan as one in the Trust. *Id*.

According to Plaintiff, Wells Fargo's beneficial interest in the DOT was extinguished in 2007 when it sold the Loan to the Series 2007-8 Trust. Compl. ¶ 17. As a consequence, the Assignment of March 2013 was allegedly fraudulent and void, since Wells Fargo had no beneficial interest to assign. Compl. ¶ 17. Also, the Assignment was allegedly fraudulent because, pursuant to the PSA, no loan could be assigned to the Series 2007-8 Trust after the Trust closed in 2007, let alone a loan in default. Compl. ¶ 16. Because the validity of the Substitution, NOD, and NTS all depend on the validity of the Assignment, Plaintiff alleges these are also fraudulent and void. Compl. ¶¶ 19, 20, 24. Although Wells Fargo was the mortgage servicer when Plaintiff obtained the Loan, Plaintiff alleges it was no longer the servicer after selling the Loan to the Trust. Compl. ¶ 20.

On or about July 23, 2013, Plaintiff mailed to Wells Fargo a Qualified Written Request for information concerning the servicing of the Loan. Compl. ¶ 22. Plaintiff did not receive any response. *Id*.

### III. DISCUSSION

A. Legal Standard

Under Federal Rules of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court

must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

B.  Request for Judicial Notice

Defendants request judicial notice of the following documents in support of their Motion: the DOT, Assignment, Substitution, NOD, and NTS. Docket No. 6. All of these have been recorded with the Contra Costa County Recorders Office. All of these documents were attached to the Complaint. *See* Exhs. A, C, D, E, G.

Plaintiff opposes Defendants' request for judicial notice, requesting the Court to judicially notice these documents "for the limited purpose of establishing that these documents were recorded in the land records of Contra Costa County on the dates stamped by the Recorder's Office." Docket No. 10-1. In particular, Plaintiff objects to the documents being used to establish that Defendants were lawful beneficiaries or that Wells Fargo had the authority to collect payments.

"[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)). At the same time, "a court may not take judicial notice of a fact that is 'subject to reasonable dispute'" even if the fact is stated in the public record. *Id*. at 689-90 (quoting Fed. R. Evid. 201(b)).

The documents are a matter of public record, since they have been recorded with the Contra Costa County Recorders Office. This order relies on the documents' legal effects and inferences warranted from these effects, but not on *facts* in the documents that Plaintiff disputes. Thus, the Court **GRANTS** Defendants' request for judicial notice.

C.  Plaintiff's Central Allegations

Except for the alleged violation of RESPA, all of the causes of action rely on one or more of three central allegations: (1) the 2007 assignment of the Loan to the Series 2007-8 Trust was ineffective; (2) Wells Fargo's beneficiary interest in the Loan was extinguished in 2007 when it sold the Loan to the Series 2007-8; and (3) Wells Fargo was no longer the mortgage servicer after it sold the Loan to the Series 2007-8 Trust. The Court addresses each in turn.

1.  Plaintiff Lacks Standing to Challenge the Effectiveness of the 2007 Assignments

Plaintiff asserts that the assignments from Wells Fargo to WFASC and from WFASC to the Series 2007-8 Trust were ineffective because the assignments lacked the proper endorsement of the Note and assignment of the DOT that were required by the "binding trust agreements" for the Trust to continue qualifying as a REMIC under the Tax Code. Compl. ¶¶ 9-12. The Trust had been formed with an election to be a REMIC. Compl. ¶ 8. The Court first notes that this assertion is inconsistent with Plaintiff's allegation that the loan was in fact sold to the Series 2007-8 Trust (thus rendering the 2013 Assignment fraudulent since Wells Fargo no longer had a beneficial interest to assign). This inconsistent allegation alone warrants dismissal of this claim.

Nonetheless, even if this Court were to overlook this inconsistency, Plaintiff's claim fails because Plaintiff lacks standing to challenge the assignments. A third party to an assignment lacks standing to challenge its effectiveness unless the assignment is void, as opposed to voidable:

> the obligors of a claim may defend the suit brought thereon on any ground that renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

*Calderon v. Bank of America, N.A.*, 941 F. Supp. 2d 753, 764 (W.D. Tex. 2013) (quoting *Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975)). *See also*

1  6A C.J.S. Assignments § 132. "Where an assignment is merely voidable at the election of the
2  assignor, third parties, and particularly the obligor, cannot avoid the obligation or successfully
3  challenge the validity or effectiveness of the transfer." 7 Cal. Jur. 3d (2012) Assignments § 43. In
4  the context of trusts, this has been explained as a ramification of the *ultra vires* doctrine, which
5  permits a beneficiary to ratify a trustee's act that is outside the scope of trustee's power. *See Bank of*
6  *America National Association v. Bassman FBT, LLC*, 981 N.E.2d 1, 8 (Ill. Ct. App. 2012).

7  Plaintiff asserts that the assignments were void under New York trust law, under which the
8  Trust was formed. Compl. ¶¶ 7, 12. New York Estates, Powers and Trusts Law Section 7-2.4
9  provides (emphasis added):

> If the trust is expressed in an instrument creating the estate of the
> trustee, every sale, conveyance, or other act of the trustee in
> contravention of the trust, except as authorized by this article and by
> any other provision of law, is *void*.

Plaintiff relies on *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013). *Glaski* read literally the term "void" in Section 7-2.4, to hold that the plaintiff had standing to challenge violations of the PSA. It reasoned, "we believe applying the statute to void the attempted transfer is justified because it protects beneficiaries of the WaMu Securitized Trust from the potential adverse consequence of the trust losing its status as a REMIC trust under the Internal Revenue Code." *Id*. at 1097. It also pointed to a New York trial court decision (unreported), *Wells Fargo Bank, N.A. v. Erobobo*, 39 Misc. 3d 1220(A), 2013 WL 1831799 (N.Y. Sup. Ct. Apr. 29, 2013), which also relied on a literal interpretation of Section 7-2.4 to hold an assignment to a REMIC trust void. *Id.*

As *Glaski* noted, its holding was at odds with decisions of this Court, including the decision of this Court in *Albmutarreb v. Bank of New York Trust Co., N.A.*, No. C 12-3061 EMC, 2012 WL 4371410 at *2 (N.D. Cal. Sept. 24, 2012), which held that plaintiffs such as here "lack standing to challenge the validity of the securitization process" because they are not parties to the PSA. Courts in this district have since rejected *Glaski*. *E.g*., *Zapata v. Wells Fargo Bank, N.A.*, No. C 13-4288 WHA, 2013 WL 6491377 (N.D. Cal. Dec. 10, 2013); *Subramani v. Wells Fargo Bank, N.A.*, No. C 13-1605 SC, 2013 WL 5913789 (N.D. Cal. Oct. 31, 2013); *Dahnken v. Wells Fargo, N.A.*, No. C 13-2838 PJH, 2013 WL 5979356 (N.D. Cal. Nov. 8, 2013), *Apostol v. Citimortgage, Inc.*, No. C 13-

1983 WHO, 2013 WL 6140528 (N.D. Cal. Nov. 21, 2013). The reason is that *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497 (2013) (decided before *Glaski*) stated the "majority rule":

> As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions.

*Jenkins*, 216 Cal. App. 4th at 515 (internal quotation marks and citations omitted).

Although *Glaski* had found the cases in this district unpersuasive because they "d[id] not address the principle that a borrower may challenge an assignment that is void and they do not apply New York trust law to the operation of the securitized trusts in question," *Glaski*, 218 Cal. App. 4th at 1098, New York appellate courts have in numerous instances found a trustee's acts outside its powers may be ratified, *see Calderon v. Bank of America, N.A.*, 941 F. Supp. 2d at 766 (citing numerous New York appellate cases); *Bank of America, N.A. v. Bassman FBT, LLC*, 981 N.E.2d at 8-10, and that acts that may be ratified are "voidable" rather than "void." *Calderon*, 941 F. Supp. 2d at 766-67 (citing *Hackett v. Hackett*, 950 N.Y.S.2d 608 (unreported), 2012 WL 669525 at * 20 (N.Y.Sup. Ct. Feb. 21, 2012), which in turn cites 27 Williston on Contracts § 70:13 (4th ed.) ("A void contract cannot be ratified; it binds no one and is a nullity. However, an agreement that is merely voidable by one party leaves both parties at liberty to ratify the transaction and insist upon its performance.")). *See* 17 C.J.S. Contracts § 4 ( "a void contract . . . is no contract whatsoever" and "cannot be validated by ratification"; "A contract that is merely voidable is capable of being confirmed or ratified by the party having the right to avoid it . . . ").

The Court finds *Calderon* more persuasive than *Glaski*. While *Glaski* relies on the benefits of retaining REMIC status and an unreported New York trial court decision, *Calderon* relies on established principles of trust and contract law and New York appellate opinions. The Court agrees with *Calderon* that the assignments were voidable under New York trust law, rather than void. Thus, Plaintiff lacks standing to challenge their effectiveness.

### 2. Plaintiff Fails to Allege Injury as a Result of the Assignment, and Lacks Standing to Challenge the Assignment on Grounds That it Violated the PSA

Plaintiff asserts that the Assignment, which states that Wells Fargo assigns its beneficial interest under the DOT to HSBC, is "fraudulent and void" because "its beneficial interest in Plaintiff's DOT was extinguished in 2007, when it sold the Loan to the Wells Fargo Mortgage-backed Securities 2007-8 Trust." Compl. ¶ 17, Exh. A. While the Court agrees that, if Wells Fargo had already sold the Loan to the Trust, then the Assignment transferred no further interest to HSBC, it fails to see how this injured Plaintiff. If the Trust purchased the Loan in 2007 as Plaintiff alleges, the Loan was property of the Trust, with or without the Assignment. In this case, HSBC had the authority to execute the Substitution, and consequently, QLS had the authority to execute the NOD and NTS.

Plaintiff's assertion that the 2007 assignment of the Loan to the Trust was ineffective yet at the same time effected its sale, so that "the true beneficiary of Plaintiff's loan is currently unknown" and "title of the Subject Property [should] be vested in Plaintiff alone, as owner in fee simple," defies common sense. Compl. ¶¶ 20, 39. Either the Loan, with its security interest, was transferred in 2007 to HSBC, in which case HSBC is the beneficiary, or, it was not, in which case Wells Fargo retained the beneficial interest which it could have assigned in 2013. Even if neither assignment was effective, Wells Fargo would still own the security interest. There is no possibility that Plaintiff is entitled to unencumbered title to the Property.

Plaintiff points to similarities between the present case and *Subramani v. Wells Fargo Bank, N.A.*, No. C 13-1605 SC, 2013 WL 5913789, in which Judge Conti held that the plaintiff had stated a plausible claim. There, as here, it was alleged that Wells Fargo had sold the plaintiff's loan to a mortgage-backed securities trust. However, the facts are distinct in key respects. First, in *Subramani*, the record was inconsistent as to the identity of the trustee under the DOT. Fidelity National Title Insurance Company was the original trustee under the DOT. But without any intervening substitution, a different entity, First American Loanstar, issued a notice of default, only after which it substituted itself as the trustee. (The notice of default stated, moreover, that the beneficiary was Wells Fargo, but Wells Fargo had allegedly sold the loan years earlier.) Then, yet

1 another entity, LSI Title Company, issued another notice of default, acting as agent for Fidelity
2 National Title Company, which was different from the original Fidelity National Title Insurance
3 Company. (After this, Wells Fargo substituted Fidelity National Title Company in place of Fidelity
4 National Title Insurance under the DOT, when it allegedly lacked any authority to do so.) Thus, it
5 was unclear which of these purported trustees was the actual trustee that could issue a notice of
6 default. Second, unlike here, the entity that was seeking to foreclose (Wells Fargo) was not the
7 entity that had purchased the loan (the mortgage-backed securities trust). Third, the plaintiff alleged
8 that the initial assignment of the loan into the trust violated California law (in addition to the PSA).
9 On these three grounds, Judge Conti found the plaintiff had plausibly stated a claim for wrongful
10 foreclosure. Because these grounds are not present here, Plaintiff's reliance on *Subramani* is
11 unavailing.

12 To the extent Plaintiff challenges the Assignment on the grounds that the PSA prohibits a
13 loan to be assigned to the Trust after the closing date or if a loan is in default, Plaintiff lacks
14 standing for the same reason she lacks standing to challenge the 2007 assignments. It follows that
15 Plaintiff also lacks standing to challenge the Substitution, NOD, and the NTS, because their validity
16 is determined by the validity of the Assignment.

17 Thus, Plaintiff has failed to allege injury due to the Assignment and lacks standing to
18 challenge the validity of the Assignment.

19     3.    <u>Plaintiff's Assertion That Wells Fargo is Not the Mortgage Servicer is Implausible</u>

20 Plaintiff does not dispute that Wells Fargo was the initial mortgage servicer under the DOT.
21 Plaintiff asserts, however, that for times relevant to her claims, the true Loan servicer is "unknown"
22 because the "securitization of Plaintiff's loan failed." Compl. ¶ 20. Not only does the Court fail to
23 see what the securitization has to do with the Loan servicer, the DOT renders Plaintiff's assertion
24 implausible. The DOT provides that the Loan "can be sold one or more times without prior notice to
25 Borrower," which might or might not result in a change of the Loan servicer. Exh. A ¶ 20. If there
26 is a change of the Loan Servicer, the DOT provides that "Borrower will be given written notice of
27 the change which will state the name and address of the new Loan Servicer, the address to which
28 payments should be made . . . ." *Id*. Plaintiff does not allege she received any notice that the

9

mortgage servicer changed. The Court is not required to accept as true Plaintiff's assertion because it is an unwarranted inference in light of the attached DOT which indicates otherwise. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998). The Court finds Plaintiff's assertion implausible.

D.  The Causes of Action

Plaintiff alleges ten causes of action against one or both Defendants: (1) Violation of RESPA, (2) Wrongful Foreclosure, (3) Quiet Title, (4) Slander of Title, (5) Fraud, (6) Cancellation of Instruments, (7) Violation of Cal. Civ. Code § 2934(a)(1)(A) (for unlawful Substitution), (8) Violation of the FDCPA (9) Violation of the UCL, and (10) Unjust Enrichment.

1.  Plaintiff Has Failed to State a Violation of RESPA

Plaintiff alleges Wells Fargo violated RESPA, 12 U.S.C. § 2601 *et seq.*, because it did not confirm receipt of or respond to Plaintiff's letter of July 23, 2013, which Plaintiff alleges was a Qualified Written Request ("QWR"). Plaintiff seeks statutory damages and attorneys fees.

A QWR is a written request from the borrower to the loan servicer "for information relating to the servicing of [a] loan" that

> (i) includes . . . the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). A loan servicer of a federally related mortgage loan has a duty to confirm receipt of a QWR and respond. *See* 12 U.S.C. §§ 2605(e)(1) and (2). A loan servicer that fails to comply with section 2605(e) is liable for "actual damages to the borrower as a result of the failure" and for "additional damages, as the court may allow, in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1).

Plaintiff has plausibly alleged that the letter was a QWR. The letter states Plaintiff's name and account, and lists 42 requests and questions, such as, "[a]ll loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers and documents that relate to the accounting of

10

the loan from the inception of the loan to the present date," and such as, "[i]dentify any person or entity who holds a beneficial interest in the Deed of Trust . . . ." Exh. F ¶¶ 9, 33.

Wells Fargo asserts that the letter is not a QWR because it does not state "the reasons for the belief of the borrower that the account is in error" and the requests "do not even relate to servicing of the Loan." Mot. at 8. However, Section 2605 requires such reasons "only to the extent applicable," and Plaintiff's letter does not contend her account was in error. Further, some requests, such as Exh. F ¶ 9 quoted above, do relate to servicing of the Loan.

Plaintiff, however, fails to allege how Wells Fargo's failure to respond resulted in damages. Plaintiff alleges that she suffered damages as a result of Defendants' "illegal and fraudulent foreclosure activities," but does not allege how Wells Fargo's response to the questions regarding her Loan servicing would have helped her avoid foreclosure, especially since Plaintiff was already in default prior to sending the letter. Compl. ¶ 75. Further, as discussed below, Plaintiff has failed to plausibly allege "illegal and fraudulent foreclosure activities."

Thus, the Court dismisses Plaintiff's RESPA cause of action with leave to amend.

2. <u>Plaintiff Has Failed to State a Claim for Wrongful Foreclosure</u>

Plaintiff alleges that Defendants and QLS initiated foreclosure without any interest in the Property or Loan. Compl. ¶ 36. However, as discussed above, assuming as true the allegation that Wells Fargo sold the Loan to HSBC, HSBC holds the beneficial interest in the Loan. Therefore, HSBC cannot be liable for wrongful foreclosure. Plaintiff also alleges that Wells Fargo "impermissibly attempted to collect mortgage payments from Plaintiff." Compl. ¶ 37. However, as discussed above, Wells Fargo had authority to collect the payments as the Loan Servicer. To the extent that Plaintiff alleges that Wells Fargo is liable because it executed the Assignment without any beneficial interest in the Loan, also as discussed above, Plaintiff cannot allege injury for which she has standing to redress. Plaintiff does not have a legal basis to challenge HSBC's ability to initiate foreclosure.

Thus, the Court dismisses this cause of action with leave to amend.

11

### 3. Plaintiff Has Failed to State a Claim for Quiet Title

Plaintiff seeks "a declaration that the title to the Property is vested in Plaintiff alone, free of any encumbrances" in favor of Defendants or anyone else. Compl. ¶ 7. To establish a claim for quiet title, the plaintiff must allege in a verified complaint:

> (a) a description of the property; (b) plaintiff's title as to which a determination is sought; (c) the adverse claims to the title; (d) the date as to which the determination is sought; and (e) a prayer for the determination of title.

*Velasquez v. Chase Home Finance LLC*, No. C-10-01641-SI, 2010 WL 3211905 at *4 (N.D. Cal. Aug. 12, 2010) (citing Code Civ. Proc. § 761.020). Generally, the "tender rule" bars a quiet title claim unless the plaintiff has first satisfied his obligations under the deed of trust. *See Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974). The tender rule does not apply when the purported trustee has no interest in the property, and therefore, no authority to foreclose. *See Martinez v. America's Wholesale Lender*, 446 Fed. Appx. 940, 943 (9th Cir. 2011). *See also, Miller v. Carrington Mortg. Servs*. No. C-12-2282 EMC, 2012 WL 3537056 at *6 (N.D. Cal. Aug. 14, 2012) ("Plaintiffs should not have to tender money to Defendants if they in fact are not the true owners of the Loan.").

Plaintiff has alleged the elements of a quiet title claim, but the tender rule bars Plaintiff's claim. The exception to the tender rule does not apply, for the same reason that Plaintiff has failed to allege a viable claim for Wrongful Foreclosure.

Thus, the Court dismisses this cause of action with leave to amend.

### 4. Plaintiff Has Failed to State a Claim for Slander of Title

Plaintiff asserts that the Assignment, Substitution, NOD, and NTS slander title.

> Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof "some special pecuniary loss or damage." . . . If the publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title.

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC,* 205 Cal. App. 4th 999, 1030 (2012) (quoting *Fearon v. Fodera* 169 Cal. 370, 379-380 (1915)). A notice of default or a notice of sale recorded by the "trustee, mortgagee, or beneficiary, or any of their authorized agents" are

"privileged communications" within the meaning of Civil Code Section 47. Cal. Civ. Code § 2924(d)(1). The privilege extends only to communications "without malice." *Id*. at § 47(c)(1); *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008).

> For this purpose, malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."

*Kachlon*, 168 Cal. App. 4th at 336 (quoting *Sanborn v. Chronicle Pub. Co.,* 18 Cal.3d 406, 413 (1976)).

The Assignment and Substitution are not a basis for slander of title, since these do not cast doubt on Plaintiff's interest in the Property – they merely substitute one creditor, or one trustee, for another. The NOD and NTS, however, do cast doubt on Plaintiff's interest in the Property, since they assert that the Property is in foreclosure, and set a sale date. Exhs. E, G. However, the NOD and NTS are privileged communications. Plaintiff asserts that privilege does not apply because Defendants recorded these documents with "malicious intent . . . for the purpose of initiating and pursuing illegal foreclosure activity." Compl. ¶¶ 47-48. As discussed above, however, Plaintiff has failed to plausibly allege illegal foreclosure activity for which Plaintiff has standing to challenge.

Thus, the Court dismisses this cause of action with leave to amend.

5. <u>Plaintiff Has Failed to State a Claim for Fraud</u>

"The necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995).

Plaintiff alleges that the Documents contained misrepresentations: the 2013 Assignment misrepresented that Wells Fargo had a beneficial interest under the DOT; the Substitution and NOD misrepresented that HSBC was the current beneficiary; and the NTS misrepresented that QLS had the authority to foreclose. Plaintiff alleges resulting damages of imminent loss of her home, impairment to her credit worthiness, mortgage payments to Wells Fargo, which Wells Fargo

13

allegedly had no authority to collect, emotional distress due to the fraud, and costs to challenge Defendants' foreclosure activities. *Id*.

Even if the Assignment is deemed to have misrepresented that Wells Fargo had a beneficial interest in the DOT, as discussed above, this did not result in damage to Plaintiff. The remaining allegations of misrepresentations are implausible because Plaintiff has failed to allege a plausible challenge to HSBC's status as a beneficiary.

Thus, the Court dismisses this cause of action with leave to amend.

6. <u>Plaintiff Has Failed to State a Claim for Cancellation of Instruments</u>

Plaintiff seeks cancellation of the DOT, the Note, and the four Documents. If there is a "reasonable apprehension" that a written instrument, if left outstanding, "may cause serious injury to a person against whom it is void or voidable," a court may order its cancellation. Cal. Civ. Code § 3412. For example, cancellation may be warranted when the written instrument violates a statute, was procured by fraud or under undue influence, or where there has been a mutual mistake or a unilateral mistake known or induced by the other party. *See* Miller & Starr, California Real Estate § 34:113 (3d ed.).

Plaintiff fails to allege why the DOT and Note are void or voidable. Plaintiff voluntarily entered into these agreements in order to obtain the Loan. The Assignment is not subject to cancellation because Plaintiff has failed to allege that the Assignment would cause her "serious injury." The remaining Documents are not subject to cancellation because there is no basis for finding that they are void or voidable against Plaintiff.

Thus, the Court dismisses this cause of action with leave to amend.

7. <u>Plaintiff Has Failed to State a Violation of Civil Code Section 2934a</u>

Plaintiff alleges that HSBC violated Section 2934a because it executed the Substitution when it was not the beneficiary. Compl. ¶ 70, Exh. D. Except in circumstances not relevant here, a substitution of a trustee under a trust deed must be executed and acknowledged by "all of the beneficiaries of the trust deed, or their successors in interest." Cal. Civ. Code § 2934a(a)(1). As discussed above, Plaintiff fails to allege a plausible actionable claim that HSBC is not the beneficiary.

14

Thus, the Court dismisses this cause of action with leave to amend.

### 8. Plaintiff Has Failed to State a Violation of the FDCPA

Plaintiff alleges that HBSC violated the FDCPA because, through its "agent" QLS, it "attempted to collect mortgage payments and associated costs and fees from Plaintiff." Compl. ¶ 77.

> The Fair Debt Collection Practices Act (FDCPA or Act) imposes civil liability on "debt collector[s]" for certain prohibited debt collection practices. . . . Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e).

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010).

Plaintiff's claim fails as a matter of law because "foreclosing on real property under a deed of trust is not an act to collect a debt, as contemplated under the FDCPA." *In re Nordeen*, 495 B.R. 468, 488 (B.A.P. 9th Cir. 2013). The *Nordeen* court cited the rationale in *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D.Or. 2002): "'Foreclosing on a trust deed is distinct from the collection of the obligation to pay money' and is 'not an attempt to collect funds from the debtor.'" *Id*. Earlier Northern district cases also so held. *See Garfinkle v. JP Morgan Chase Bank, N.A.*, No. C-11-01636 CW, 2011 WL 3157157 (N.D. Cal. July 26, 2011); *Gamboa v. Tr. Corps.*, No. C-09-0007 SC, 2009 WL 656285 (N.D. Cal. Mar. 12, 2009); *Jozinovich v. JP Morgan Chase Bank, N.A.*, No. C-09-03326 TEH (N.D. Cal. Jan. 14, 2010). Since this deficiency cannot be cured with amendment, the Court dismisses this cause of action with prejudice.

### 9. Plaintiff Has Failed to State a Violation of the UCL

The UCL prohibits unfair competition, which is defined as, inter alia, "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." *Id.* at § 17204. The Court dismisses this cause of action with leave to amend because Plaintiff has failed to plausibly allege any unlawful, unfair, or fraudulent conduct by Defendants that resulted in injury cognizable in this case.

10. Plaintiff Has Failed to State a Claim for Unjust Enrichment

Plaintiff alleges that Wells Fargo was unjustly enriched because Plaintiff has made mortgage payments to Wells Fargo, when it has no rights to payments. Compl. ¶¶ 90-92. However, as discussed above, the DOT indicates that Wells Fargo was entitled to the payments as the mortgage servicer. Thus, the Court dismisses this cause of action with leave to amend.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss. The cause of action for violation of the FDCPA is dismissed with prejudice. Plaintiff has leave to amend the remaining causes of action. Any amendment must be filed within 30 days of the date of this order. Plaintiff is cautioned that any amendment must account for the Court's ruling herein and be made in good faith in compliance with Fed. R. Civ. P. 11.

This order disposes of Docket No. 5.

IT IS SO ORDERED.

Dated: March 7, 2014

EDWARD M. CHEN
United States District Judge